IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**ELIE ARSHAM**                                    *
**125D Versailles Circle**
**Towson, MD 21204**                        *
                    **Plaintiff,**                  *          Case No: _____
**v.**                                                   *

**CITY OF BALTIMORE**                      *
**DEPARTMENT OF PUBLIC WORKS**
        **c/o Baltimore City Solicitor**      *
        **Law Dept.**
        **100 N. Holliday Street**             *
        **Suite 101**
        **Baltimore, MD 21202**             *

                        **Defendant.**            *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>CIVIL COMPLAINT</u>

Elaheh "Elie" Arsham, (hereinafter, "Plaintiff"), by and through undersigned counsel,

hereby alleges and avers as follows:

1.  This is an action by which Plaintiff seeks relief for Defendant's violations of

    Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, as

    amended, 42 U.S.C. § 2000e, *et seq,* (hereinafter "Title VII") and MD Code § 20-

    1013, based on discrimination by Defendant as *Respondeat Superior*, acting by

    and through its agents, as well as tortuous acts of the same.

2.  Plaintiff's claims include discrimination due to national origin or perceived

    national origin, gender, a hostile work environment, disparate treatment,

    retaliation, and intentional or negligent infliction of emotional distress.

3.  All of the prerequisite administrative remedies have been exhausted prior to filing

this claim (Exhibit 1, Right to Sue Letter, DOJ).

4.  Plaintiff is the victim of the incidents contained herein and was of legal age at the time of the incidents.

5.  Plaintiff is a member of a protected class from employment discrimination based on her national origin/ethnicity and as a woman.

6.  Defendant City of Baltimore Department of Public Works (hereinafter "DPW") is a local government/municipal public works department functioning within the United States and the State of Maryland and is subject to the provisions of Title VII and MD Code § 20-1013.

## FACTUAL BACKGROUND

7.  Ms. Arsham began her employment with the DPW on August 8, 1988 and reached the level of Engineer II before her termination from that department on January 17, 2014. Her last assignment was in the Surface Water Management Division of Environmental Engineering Section of the Bureau of Water and Wastewater of the Department of Public Works.

8.  During the tenure of her employment, she worked with another DPW employee named Prakash Mistry, an agent of DPW, initially as colleagues. In March 2010, Mr. Mistry became Ms. Arsham's supervisor. Over the course of the past three years, Mr. Mistry's discriminatory actions have been reinforced by the approval and oversight of his supervisor, Division Chief Ralph Cullison.

9.  Prior to becoming her supervisor, Mr. Mistry had held a conversation with Ms. Arsham where he speculated that she was a member of the "Parsee" ethnic group,

2

and he expressed his disdain for the Parsee ethnic group at that time.

10. Ms. Arsham, whose ethnic heritage is Persian (modern-day Iran), researched the Parsee ethnicity and found it to originate in India, and through her belief it is one of the lower castes of Indian ethnic groups. Mr. Mistry is believed to be of Indian descent.

11. The relationship between Mr. Mistry and Ms. Arsham, which had never been good before, deteriorated precipitously after March, 2010, when Mr. Mistry began exercising his supervisory authority over Ms. Arsham, and abusing that authority, continuing to the termination of Ms. Arsham's employment.

12. Ms. Arsham has been treated in a disparate manner by her supervisors, different from other similarly situated colleagues. They subjected her to unequal terms and conditions and disparate treatment in her employment due to his gender and national origin/ethnicity (or her perceived ethnicity). Other, similarly situated males and employees of European descent, and African Americans, were provided with benefits and treatment that Plaintiff was not afforded.

13. As an example, Ms. Arsham was categorized as an "Engineer 2." Another colleague who is an African American male, but is junior to her by eight (8) years at the job and also categorized as an "Engineer 2" was treated better than Ms. Arsham. When Ms. Arsham requested time off, DPW treated it as Leave Without Pay and she was written up for an "occasion" each time she requested – of which too many would be a violation of department policy and bring termination. When the African American male requested time off, he was granted that time off and

no further punitive actions were taken.  The management went so far as to require
that Ms. Arsham's time sheets be approved by this junior colleague who was
receiving the disparately favorable treatment, much to the embarrassment and
dismay of Ms. Arsham.  Ms. Arsham had to report to this junior colleague on all
projects and get his signature on leave slips in Mr. Mistry's absence, much to her
embarrassment and humiliation.  This disparate treatment with regard to leave
requests is especially poignant in light of Ms. Arsham's efforts to care for her
ailing parents in their elder years and her own struggles, of which DPW
leadership was well aware, based on Ms. Arsham's having provided notice to
them of her parent's and their awareness of her suicide attempt in July 2013.
Human Resources Representative Jackie McCullough was assigned to keep track
of Ms. Arsham's time – separate from any other employee in the Division.

14. The accumulation of unpaid suspended days and forfeited vacation days in a
policy that was not carried out against other, similarly situated co-workers, caused
her to suffer financially.

15. On several occasions, Mr. Mistry did not invite Ms. Arsham to project meetings
where information would be shared and for which she was responsible,
sabotaging any potential of success in her work.  Ms. Arsham had to undergo
investigative efforts to simply find out about meetings taking place so that she
would have the information necessary to do the job for which she was
responsible.

16. Ms. Arsham was denied permission on several times to visit job sites on projects

for which she was being held responsible, making it impossible for her to adequately and competently perform her duties. This sabotage of her efforts at success was not committed against other, similarly situated colleagues who were not female and believed to be Parsees.

17. On more than one occasion she was questioned about her whereabouts when she stepped away from her desk, while other similarly situated colleagues did not get questioned for the same conduct or for the same manner.  This disparate treatment by her supervisors can be attributed to her gender and national origin and the views expressed by Mr. Mistry about his opinion toward Parsee people.

18. Ms. Arsham was yelled at by Mr. Mistry in meetings, in the presence of others who heard the yelling, causing Ms. Arsham great embarrassment and humiliation. DPW Management conducted a campaign of attempting to portray Ms. Arsham as violent, having the presence of security personnel for events where she was present, when in fact she had never shown any signs of violent behavior.

19. Ms. Arsham filed a complaint, a Charge of Discrimination, presented to the EEOC, on November 2, 2010.  She also made her discrimination and disparate treatment claims known to the DPW administration via emails and phone calls made by her psychiatrist, Dr. O. Joseph Bienvenu, to DPW leadership where he expressed his dire concern for the way Ms. Arsham was being treated by DPW. The situation did not improve, and to the contrary, deteriorated to the point where Ms. Arsham suffered a severe psychological episode/suicidal incident in July 2013, as a direct result of the harassment and discrimination she experienced at

her rapidly deteriorating work environment.

20. When Ms. Arsham requested a "Right to Sue" letter from the EEOC, through undersigned counsel, on October 3, 2013, DPW agents undertook a campaign to terminate Ms. Arsham's employment by stockpiling "occasions" of unauthorized leave, culminating with that termination on January 17, 2014, ostensibly for violating the department's leave policy, but, in reality, a pretext for pushing her discrimination claims forward in the process.  DPW's termination for cause has deprived her of retirement benefits she had rightfully earned for her many years of dedicated service to the City of Baltimore, had she not suffered this discrimination.

## COUNT 1

## CREATING AND MAINTAINING A HOSTILE WORK ENVIRONMENT VIA DISPARATE TREATMENT IN VIOLATION OF 42 U.S.C. § 2000e and MD CODE §20-1013

21. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

22. By and through its conduct, Defendant/s violated 42 U.S.C. § 2000e, as amended, and MD Code §20-1013, by subjecting Plaintiff to harassment, and a hostile work environment based on disparate treatment from her similarly situated peers, ostensibly for legitimate reasons as pretext, but in actuality, based on her national origin and gender.

23. Defendant, through its agents, engaged in a continuing course of conduct repeated instances of discriminatory conduct from March, 2010 through Ms. Arsham's termination in January 2014.  Defendant's conduct was unwelcome, unwarranted,

and extremely biased against Plaintiff based on her gender and national origin.

24. Defendant's agent's discriminatory behavior would be considered objectively

hostile or offensive to any reasonable person in Plaintiff's former employment.

25. Defendant's agent's behavior was either severe and/or pervasive, and led to

psychological and other emotional issues that Plaintiff suffered and continues to

suffer.

26. The behavior of Agents to Defendant/s were perpetuated and tolerated by

Defendant despite Plaintiff's protests of unlawful treatment from November 2010

through January 17, 2014.

27. Defendant's supervisory agents knew of Ms. Arsham's treatment, participated in

it, and intentionally failed to investigate or remedy the unlawful conduct averred

in this Complaint that was practiced against Plaintiff.

28. Defendant's discriminatory behavior against Plaintiff was severe, actionable, and

in violation of Plaintiff's rights to be free from such harassment in the workplace.

29. Defendant's agent/s, by their intentionally motivated harassment and

discriminatory behavior violated Plaintiff's constitutional rights and she was

damaged by those actions during her employment and as a result of the

termination of her employment.

30. Plaintiff alleges damages in the amount of ONE MILLION TWO HUNDRED

THOUSAND DOLLARS ($1,200,000.00).

**COUNT 2**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e**
**and MD MD CODE §20-1013**

31. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

32. Defendant/s, upon being notified of Plaintiff's filing of a discrimination claim in November 2010, carried out a campaign to retaliate against her for undertaking her protected action. That investigation, initially carried out by a state agency, took an inordinate amount of time. When Plaintiff requested a Right to Sue letter on October 3, 2013, which was her right to do since the investigation was over one hundred eighty days old, the request had to go to the Equal Employment Opportunity Commission, and then be reviewed by the US Department of Justice. During the interim time, DPW escalated efforts to accumulate "occasions" to terminate Ms. Arsham's employment as a violation of department policy. The temporal proximity of Plaintiff's request for a Right to Sue letter on October 3, 2013, and DPW's notice on December 31, 2013, that she was suspended, and ultimately terminated on January 17, 2014, are a direct reflection of the retaliation Ms. Arsham experienced for carrying out her protected acts of filing that discrimination claim and requesting her Right to Sue letter.

33. Defendant's actions were perpetuated and tolerated by DPW's supervisory chain of command despite Plaintiff's protests of unlawful treatment from November, 2010 to January 2014, when a retaliatory termination took place.

34. Defendant's intentionally failed to investigate or remedy the unlawful conduct averred in this Complaint that was practiced against Plaintiff.

35. Defendant agents intended these adverse employment actions to occur against Plaintiff in retaliation for her protected activity.

36. When Plaintiff complained of Defendant's discriminatory actions and disparate treatment via filing a complaint with the Equal Employment Opportunity Commission, her treatment by DPW supervisors worsened, and when she requested a Right to Sue Letter from EEOC, which required review by the Department of Justice, she was thereafter suspended, and then terminated on January 17, 2014.

37. Defendant used the pretext of violating the department's leave policy for the termination, in direct retaliation for Defendant's steps to protect her civil rights, identify unlawful discrimination, and protest unfair treatment.

38. As a result of Defendant's actions, Plaintiff was deprived of her civil rights and has suffered economic and other damages, to include but not limited to embarrassment, humiliation, damage to his reputation and sense of self-worth, and financial damages and loss.

39. Because of the damages Plaintiff has suffered and continues to suffer, Plaintiff is entitled to such affirmative and equitable relief as may be appropriate, pursuant to Title VII of the Civil Rights Act of 1964 and US Code.  Plaintiff alleges damages in the amount of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00).

## COUNT 3
## INTENTIONAL and/or NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

40. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

41. Defendant Agents, by their intentional abuse through the disparate treatment of an employee prior to her attempted suicide and thereafter, and of which they knew

had attempted suicide in addition to caring for her elderly parents, of which they

also knew, carried out their conduct in a manner that was extreme, outrageous,

and unjustified, and caused Ms. Arsham to suffer severe emotional distress.

42. Defendant agent's extreme and outrageous conduct was unjustified, and

reasonable supervisory oversight of the situation would have prevented the

situation from escalating to where Plaintiff felt trapped and attempted to take her

life. Reasonable supervisory oversight of the situation would have prevented her

discrimination from continuing after her suicide attempt, to the point of escalating

to the termination of her employment as a retaliatory act.

43. Plaintiff alleges damages in the amount of TWO HUNDRED THOUSAND

DOLLARS ($200,000.00).

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on each and every one of his claims as stated and pleaded

herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands the following relief against Defendant:

1. The impaneling of a jury to consider the merits of the claims herein;

2. That this Court order Defendant/s pay Plaintiff the value of any back pay for lost career

opportunities and expenses and the value of any lost bonuses;

3. Pre and Post Judgment cost, interest, and attorney's fees pursuant to the Civil Rights

Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988; and

4. Such other and further relief as to the Court may deem just and proper.

Respectfully submitted,

/s/ W. Scott Hannon

W. Scott Hannon, Esq.
The Hannon Law Firm, LLC
218 E. Lexington Street, Ste. 505
Baltimore, MD 21202
(410) 625-0001
Attorney for Plaintiff