**UNITED STATES DISTRICT COURT FOR MARYLAND**
**NORTHERN DIVISION**

**ELIE ARSHAM** *

**Plaintiff,** * **Case No: 1:14-cv-02158**

**v.** *

**MAYOR and CITY COUNCIL OF BALTIMORE** *
**c/o Baltimore City Solicitor** *

**Defendant.** *

* * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED CIVIL COMPLAINT**

Elaheh "Elie" Arsham, (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby responds to Defendant Mayor and City Council of Baltimore's Motion to Dismiss (partial).

In its motion, the Defense accurately cites the standard set forth in *Bell Atlantic Corp. v. Twomby*, 550 U.S. 544, 127 S. Ct. 1955 (2007) requiring that a claim be "plausible on its face" and Plaintiff believes she has done so. Most importantly to Plaintiff, we ask this court to "draw on its judicial experience and common sense" as outlined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S.Ct. 1950 (2009) in reviewing each of Defendant's claims and Plaintiff's response. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 679. Plaintiff will address and counter each of Defendant's arguments and urge (with the exception of Plaintiff's claim of Negligent Infliction of Emotional Distress) the Court to deny the motion based on the following arguments.

## ARGUMENT

### 1. Plaintiff Complied with the Local Government Tort Claim Act (LGTCA)

Defendant's Partial Motion to Dismiss raises an issue of compliance with the Local Government Tort Claims Act (LGTCA) but is vague on specifically how Plaintiff failed to comply, never specifically stating that no notice has been provided or received by the City of Baltimore via the City Solicitor. Instead, Defendant makes a broad argument that never distinguishes whether no notice was given or that notice was given but arguing that it was deficient by failing to plead as much in the Complaint. Indeed, Plaintiff has complied with the LGTCA. Plaintiff provided written notice to Baltimore's City Solicitor via certified mail on January 15, 2014 (Exhibit 1, Letter from undersigned counsel, dated January 15, 2014 and signed return of receipt from an agent of the Office of Baltimore City Solicitor).

Defendant in its motion mingles the arguments of compliance with the notice requirement under LGTCA with providing a statement of compliance in the complaint. Defendant cites *Curtis v. Pracht*, 202 F.Supp.2d 406, 414 (D.Md. 2002). where the court ruled that the LGTCA "***should*** be alleged in the complaint" (emphasis added) where use of the operative word "should" denotes a suggestive best practice and not a condition for compliance with the pleading, and that it can be done so by a general statement. Defense cites *Hansen v. City of Laurel*, 25 A.3d 122, 420 Md. 670 (2011) which states that "Under a number of statutes, the failure of a plaintiff to give notice to a local government is a matter of defense that must be pleaded by the local government…..Maryland rules and decisions reach somewhat of a compromise – plaintiffs must allege the performance

of conditions precedent, but they can do so *generally* (emphasis added by undersigned counsel). See Rule 2-304(b). It is up to defendants, then, to show that "a particular condition precedent has in fact [not] been satisfied. Maryland Rules Commentary at 300." The *Hansen* court cites *Cannon v. McKen*, 296 Md. 27, 38, 459 A.2d 196, 202 (1983), "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver *generally* that all conditions precedent have been performed or have occurred."(emphasis added by *Hansen* court in its opinion).

Plaintiff believes she has met the general requirement of citing compliance of meeting all conditions precedent by alluding to it as having exhausted all administrative remedies. However, if the Court denies Defendant's motion regarding dismissal of Plaintiff's tort claim, argued *infra*, and if Defendant is correct in its averment that a specific statement of compliance with the LGTCA is required, despite the ruling of a general statement in *Hansen* and *McKen*, then Plaintiff would seek the discretion of this Court in permitting the filing of an amended complaint, with specific notation that LGTCA notice was provided to Defendant on January 15, 2014. "A party may move to amend his complaint pursuant to Rule 15(a) and "leave shall be freely given when justice so requires. FED R. CIV. P. 15(a). Under Rule 15(a), "[t]he decision to grant a party leave to amend rests within the sound discretion of the district court." *Healthsouth Rehabilitation Hospital v. American Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996). In *Hansen,* the dissenting opinion cites *Hall v. Barlow, Corp.*, 255 Md. 28, 255 A.2d 873 (1969), notes "the modern trend is to freely allow amendments in the interests of justice"…It is well settled that amendments are to be fully allowed to the end that cases

will be tried on their merits rather than upon the niceties of pleading." If the Court finds that Plaintiff's Claim of Intentional Infliction of Emotional Distress overrides the Defendant's Motion to Dismiss, argued *infra*, and that the statement in the complaint of exhausting all administrative remedies fails to meet the general statement requirement of the LGTCA, as ruled in *Hansen*, then she asks the court to grant leave to amend the Complaint in order to pursue justice. Justice so requires that Plaintiff be permitted to pursue her tort claims against the Defendant, and it would be done so with a minimal prejudice to Defendant.

2. **Claim of Intentional *AND/OR* Negligent Intentional Infliction of Emotional Distress**

Plaintiff pled in the Complaint a claim for "intentional and/or negligent infliction of emotional distress. Plaintiff concedes that inclusion of Negligent Infliction of Emotional Distress is not cognizable in the State of Maryland and Plaintiff's use of "and/or" syntax was mistaken. As such, the claim of Negligent Infliction of Emotional Distress only, should be dismissed and Plaintiff so stipulates. However, as Plaintiff's pleading clearly delineates "intentional AND/OR negligent" infliction of emotional distress, the claim of Intentional Infliction of Emotional Distress (IIED) stands separate and apart from any claim of negligence and should be permitted to go forward. Defendant uses an argument that such claims are "rarely viable" – making that judgment having had no discovery take place as yet.

Four elements must be present for a claim of IIED: the presence of intentional or reckless conduct, which is extreme or outrageous, with a causal connection between the wrongful conduct and the emotional distress, which must be severe. *Lasater v.*

*Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010). The court in *Harris v. Jones*, 380 A.2d 611, 615 (Md. 1977), wrote, that when considering a motion to dismiss IIED, "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as extreme and outrageous; where reasonable men may differ, it is for the jury to determine." This is a case where Plaintiff attempted suicide, largely because of her mental anguish directly related to her treatment at work. In a similar case where the Plaintiff shared the specter of suicide as in the instant case, a dismissal was reversed when an employee filed for workers' compensation and the insurer harassed her with the intent of forcing her to drop her claim or commit suicide. *Young v. Hartford Accident & Indem. Co.*, 492 A.2d 1270 (Md. 1985). In the reasonable eyes of the Plaintiff, her supervisors' actions were clearly extreme and outrageous, enough for her to consider the ultimate act of acquiescence. These were not "mere insults, indignities, threats, or annoyances, petty oppressions or other trivialities", as Defendant states in its motion, but enough to create a situation where a woman attempted suicide because of her workplace environment. To insinuate otherwise is to diminish the credence of Plaintiff's complaint, which, on its face, meets the standard to bring this claim forward and not close the courthouse doors to Plaintiff and others like her who have experienced such tortious conduct.

Plaintiff laid out several examples of Defendants conduct and why she made this claim:

17. On more than one occasion she was questioned about her whereabouts when she stepped away from her desk, while other similarly situated colleagues did not get questioned for the same conduct or for the same manner….
18. Ms. Arsham was yelled at by Mr. Mistry in meetings, in the presence of others

who heard the yelling, causing Ms. Arsham great embarrassment and humiliation. DPW Management conducted a campaign of attempting to portray Ms. Arsham as violent, having the presence of security personnel for events where she was present, when in fact she had never shown any signs of violent behavior.

19. Ms. Arsham filed a complaint, a Charge of Discrimination, presented to the EEOC, on November 2, 2010. She also made her discrimination and disparate treatment claims known to the DPW administration via emails and phone calls made by her psychiatrist, Dr. O. Joseph Bienvenu, to DPW leadership where he expressed his dire concern for the way Ms. Arsham was being treated by DPW. The situation did not improve, and to the contrary, deteriorated to the point where Ms. Arsham suffered a severe psychological episode/suicidal incident in July 2013, as a direct result of the harassment and discrimination she experienced at her rapidly deteriorating work environment.

Plaintiff had been and continues to be under the medical care of O. Joseph Bienvenu, MD, Ph.D. Several Enclosures of letters and emails from Dr. Bienvenu reveal his attempts to intercede on his patient's behalf, demonstrating his concern for her well-being in the midst of her apparent mental distress caused by the treatment she received by agents of the Defendant. (Enclosures 2,3,4, and 5). Despite intervention by Dr. Bienvenu, Defendant's agents continued on their course of conduct. They did that by subjecting Plaintiff to an ever-increasing regimen of harassment, disparate treatment, and attempting to portray her as violent, with no cause or reason for doing so. By taking such actions as having security officers present at meetings with her and requiring an accounting of her time when other similarly situated personnel were not required the same scrutiny, prior to and after Plaintiff's suicide attempt, Defendant demonstrated the level of extreme behavior required for an IIED claim.

3. **Discrimination based on National Origin and Gender**.

Plaintiff's claims of discrimination and retaliation are based on national origin (ethnicity) and gender. "National origin" means "the country from which you or your

forebearers came." *Espinoza v. Farah Mfg., Co*., 414 U.S. 86, 94 S.Ct. 334 (1973). Plaintiff, by virtue of being a woman of ethnic Persian (Iranian) origin is in a protected class, whether she is perceived to be of Persian descent or from an Indian ethnic origin, which would also be a protected class, as part of her *prima facie* case. *Moore v. City of Charlotte*, F.2d 1100 (4th Cir. 1985). *Hughes v. Bedsole,* 48 F.3d 1376, 1384 (4th Cir.1995), *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993). Defendant cites several District Court cases, none of which are from within the US Fourth Circuit Court of Appeals, and thus not binding on this Court.

Just as in the argument regarding IIED, *supra*, in the Complaint, Plaintiff's use of the word "or" means "in the alternative." Plaintiff meets the protected class requirement by virtue of her Persian (Iranian) ancestry. 42 U.S.C. §2000e and 29 C.F.R. 1606. However, if Mr. Mistry's discriminatory treatment of Ms. Arsham was based on his misunderstanding that she descends from the Parsee ethnic group, which would also constitute a minority ethnic group from South Asia, then she still meets the requirement of being in a protected class. While Plaintiff can prove discriminatory conduct based on animus toward her because of her ethnicity, she cannot peer into Mr. Mistry's mind and discern whether it is because of her actual ethnic heritage or because of what Mr. Mistry believes her ethnic heritage to be. Defendant would dilute Plaintiff's claims of discrimination and retaliation by putting them forth as being simply a mistaken perception of a Plaintiff's ethnicity. Whether animus was toward Plaintiff's Persian ancestry or animus toward a perceived Parsee ethnicity, Plaintiff has made the case that Defendant's conduct is based on an animus toward Defendant only because of her

ethnicity, whether his perception was accurate or mistaken. Defendant subjected her to unequal terms and conditions and disparate treatment in her employment due to her gender and national origin/ethnicity (or her perceived ethnicity), as cited in the Plaintiff's Complaint:

8. Prior to becoming her supervisor, Mr. Mistry had held a conversation with Ms. Arsham where he speculated that she was a member of the "Parsee" ethnic group, and he expressed his disdain for the Parsee ethnic group at that time.
9. Ms. Arsham, whose ethnic heritage is Persian (modern-day Iran), researched the Parsee ethnicity and found it to originate in India, and through her belief it is one of the lower castes of Indian ethnic groups. Mr. Mistry is believed to be of Indian descent.
10. The relationship between Mr. Mistry and Ms. Arsham, which had never been good before, deteriorated precipitously after March, 2010, when Mr. Mistry began exercising his supervisory authority over Ms. Arsham, and abusing that authority, continuing to the termination of Ms. Arsham's employment.
11. Ms. Arsham has been treated in a disparate manner by her supervisors, different from other similarly situated colleagues. They subjected her to unequal terms and conditions and disparate treatment in her employment due to his gender and national origin/ethnicity (or her perceived ethnicity). Other, similarly situated males and employees of European descent, and African Americans, were provided with benefits and treatment that Plaintiff was not afforded.

As noted in the argument regarding IIED and the exhibits provided, Plaintiff's mental health professional notes the deterioration of her mental health as her work conditions deteriorated. The temporal proximity of Defendant's promotion of Mr. Mistry to a supervisory position over Plaintiff in the last three (3) years of her twenty-five (25) year career at DPW, and the rapid demise of Plaintiff's work conditions and mental health in those last years during his supervision, provides evidence of a discriminatory intent.

**4. The inter-relationship between Federal Claims under Title VII and MD Code, State Government § 20-1013**.

As stated in Plaintiff's Complaint and First Amended Complaint, "This is an

action by which Plaintiff seeks relief for Defendant's violations of Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq,* (hereinafter "Title VII") and MD Code § 20-1013…" MD Code, State Government § 20-1013, Civil Action by Complainant (Exhibit 6) provides remedies codified in MD Code and interpreted by Maryland, and while similar to federal law under Title VII, codified as 42 U.S.C. § 2000e, *et seq,* it has some marked differences. The Maryland Court of Appeals wrote in *Haas v. Lockheed Martin Corp.*, 396 Md. 469, ___ n.10 (2007), "Maryland appellate courts have interpreted state statutes, rules, and constitutional provisions differently from analogous federal provisions on numerous occasions, even where the state provision is modeled after its federal counterpart. Maryland courts sometimes prefer interpretations of state statutes varying from similar federal statutes." Thus, that is the reason this case was originally filed in the State Court of Maryland. However, while this case has now been removed to the US District Court, this federal court must interpret both federal law and state law as pled by the Plaintiff in her First Amended Complaint. MD Code, State Government, §20-1013, Civil Action by Complainant provides a remedy, under Maryland state law, that provides language of "unlawful employment practice" – defined in MD Code §20-606, Unlawful Employment Practices, (Exhibit 7), that differs from language in the federal statute. Plaintiff's use of citation of both the federal statutes and Maryland state statutes expresses her desire to be protected under the panoply of both federal and state anti-discrimination and anti-retaliation legislation.

**CONCLUSION**

Plaintiff stipulates to the dismissal of her claim of Negligent Infliction of Emotional Distress. However, as demonstrated in her arguments, *supra*, sufficient grounds remain for her claims of Intentional Infliction of Emotional Distress to withstand Defendant's Motion to Dismiss. Plaintiff believes she has met the requirements of *Hansen v. City of Laurel*, 25 A.3d 122, 420 Md. 670 (2011), in that she has stated her compliance with the LGTCA generally. However, if such is not the case, and the court agrees the Plaintiff that the Defendant's Motion to Dismiss Plaintiff's IIED claim should be denied, but Plaintiff's LGTCA compliance needs to be more specifically cited in her Complaint, then Plaintiff would seek leave of the Court to amend her complaint to specifically state LGTCA compliance, in the interest of justice. Additionally, Plaintiff seeks the Court's denial of Defendants motion based on her argument that her discrimination and retaliation claims meet the legal test for proceeding forward, based on federal law and state anti-discrimination statutes, because she meets the requirements of being in a protected class, whether it is because of her actual ethnic heritage or what Defendant agent/s perceived her ethnic heritage to be.

Respectfully submitted,

_______/s/_____________

W. Scott Hannon, Esq.
The Hannon Law Firm, LLC
218 E. Lexington St., Ste. 505
Baltimore, MD 21202
MD Fed. Bar No. 28564
Tel: (410) 625-0001
Email: scott@hannonlegal.com

*Attorney for the Plaintiff*

**Certificate of Service**

I hereby certify that, on this 27th day of July, 2014, the Plaintiff's Response to Defendant's Motion to Partially Dismiss Plaintiff's First Amended Civil Complaint was filed using the US District Court for Maryland's Electronic Case Filing System.

/s/ W. Scott Hannon___________________
W. Scott Hannon, Esq.